2020 IL App (1st) 180011-U

No. 1-18-0011

Order filed March 10, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 18776 |
| | ) | |
| JERMAINE FOOTS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial counsel's failure to file a motion to quash arrest and suppress evidence was not ineffective assistance where the police had probable cause to arrest defendant upon observing him holding a firearm in his hand inside a vehicle; 10-year sentence for being an armed habitual criminal is not excessive.

¶ 2    Following a jury trial, defendant Jermaine Foots was found guilty of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)) and unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)). The trial court merged the

UUWF conviction into the armed habitual criminal conviction and sentenced defendant to a term of 10 years' imprisonment. On appeal, defendant contends that his trial counsel rendered ineffective assistance because counsel failed to file a motion to quash arrest and suppress evidence where the police lacked probable cause to arrest him. Defendant also contends that this 10-year sentence is excessive. We affirm.

¶ 3    Defendant was tried on one count each of being an armed habitual criminal and UUWF. At trial, Chicago police officer Israel Gamez testified that about 11:30 p.m. on November 27, 2016, he was a passenger in an unmarked police vehicle being driven by his partner, Officer Enrique Delgado Fernandez. Near the intersection of 83rd Street and Colfax Avenue, the officers observed a vehicle with its license plate light extinguished. The officers activated their siren and lights and pulled over the vehicle for a traffic violation. The vehicle pulled to the curb and stopped. Gamez exited his vehicle and approached the passenger's side of the stopped vehicle, using his flashlight to illuminate the inside of the vehicle. Nothing was blocking Gamez's view. Defendant was sitting on the passenger's side of the vehicle. Gamez identified defendant in court. When Gamez was within two to three feet of defendant, he observed defendant move his hands towards his waist, tucking a handgun into his belt line, directly behind his belt buckle.

¶ 4    Gamez "immediately" opened the vehicle's door and asked defendant to exit the vehicle. Defendant complied. Gamez "immediately" handcuffed defendant. Gamez reached towards defendant's waistline where he had observed defendant "stuffing" the handgun. Defendant tried to bend over to prevent Gamez from grabbing the gun. Gamez pulled defendant back, which straightened him out, and removed the handgun from defendant's waistband. The firearm was a 380 Ruger blue steel handgun. Gamez did not wait for an evidence technician, but instead,

recovered the weapon himself because the gun was "readily available to the defendant." Gamez removed the magazine from the gun, which contained four rounds, and ejected one round that was loaded in the chamber.

¶ 5    Gamez testified that defendant was "placed in custody when I made the observation," and was held against the vehicle. Fernandez removed the driver from the vehicle. As Gamez recovered the firearm, defendant stated to the driver "tell them it's your pull and I was just holding it." Gamez explained that "pull" is street terminology for a handgun. Defendant was transported to the police station. After being advised of his *Miranda* rights, defendant told Gamez and Fernandez that he would give them three more guns if they would let him go.

¶ 6    On cross-examination, Gamez acknowledged that he did not know how long defendant had been in the vehicle, where the vehicle had come from, or where it was going. The vehicle was a 2004 Chevrolet Cavalier. Defendant did not own the vehicle. The driver was Charles Bolden. Bolden stopped his vehicle about 30 seconds after the police activated their lights. Gamez estimated that it took him about five seconds to walk from his vehicle to the passenger door of the Cavalier. Gamez was standing directly outside the passenger door of the Cavalier when he saw defendant placing the weapon in his waistband. Defendant was holding the firearm in his hand. After recovering and unloading the firearm, Gamez placed it inside his pocket. Gamez did not submit the firearm for fingerprint or DNA analysis because he had handled the weapon. Gamez explained that he secured defendant's hands in handcuffs, held on to defendant, and reached around and removed the weapon from defendant's waistband.

¶ 7    Officer Fernandez testified substantially the same as Gamez regarding their stop of the Cavalier for a traffic violation. Fernandez exited his vehicle and approached the driver of the

Cavalier while Gamez approached the passenger side of that vehicle. As Fernandez spoke with the driver, he observed Gamez open the front passenger door and saw defendant exit the Cavalier. Fernandez identified defendant in court. Fernandez observed Gamez remove a handgun from defendant's waistband. Fernandez then asked the driver to exit the vehicle. Defendant yelled across the vehicle to the driver "Hey, man, that's your pull. I was just holding it." Gamez advised defendant of his *Miranda* rights at the scene, and defendant was transported to the police station. Fernandez again advised defendant of his rights, after which defendant stated to the officers "Hey, man, I can give you three more guns if you make this go away."

¶ 8 The State presented stipulations that defendant was previously convicted of a qualifying felony offense for the purpose of the UUWF offense, and that he was previously convicted of two qualifying felony offenses for the purpose of the armed habitual criminal offense. The jury found defendant guilty of armed habitual criminal and UUWF.

¶ 9 At sentencing, the State argued in aggravation that defendant had two prior Class 2 felony convictions. Defendant had a 2012 burglary conviction for which he was sentenced to probation, which he violated. He also had a 2014 UUWF conviction for which he was sentenced to five years' imprisonment with a recommendation for boot camp. The State argued that the fact that defendant was charged with another gun offense in this case showed that he did not learn his lesson and continued to violate the law by possessing firearms. The State requested a substantial prison sentence for the armed habitual criminal conviction.

¶ 10 In mitigation, defense counsel argued that defendant was 25 years old and the father of three young children. Defendant was raised on the east side of Chicago and attended Dunbar High School until the tenth grade. Defendant told counsel that he did not finish high school

because he got in trouble. Counsel urged the court to recognize that defendant had a curiosity or intellect and was an avid reader. Defendant became interested in Christianity, read portions of the Bible, and asked questions about faith. Defendant told counsel that he wanted to get a job, take care of his children, and possibly enter the military. Counsel further argued that defendant had strong family ties. Counsel noted that the presentence investigation report (PSI) indicated that defendant's mother was tragically murdered, and his father died at a young age. Defendant had five older sisters, two of whom were in court, and two brothers. He also had two cousins who were present in court. Counsel argued that defendant's family supported him throughout the case and were helping raise his children.

¶ 11    Counsel acknowledged that defendant had been in "a lot of trouble" and previously served a five-year prison sentence. Defendant did not get a chance to participate in the recommended boot camp. Counsel noted that the sentencing range was 6 to 30 years' imprisonment and stated that it would not be right to ask for the minimum term due to defendant's criminal background. Counsel suggested a sentence of eight years' imprisonment. Counsel argued that defendant was transforming in a positive way by asking questions about faith, reading, and thinking about his future. Counsel stated that an eight-year sentence would give defendant time to reflect on the fact that possessing a gun in a vehicle would land him in a terrible situation. Counsel stated that defendant no longer wanted to be a burden on his family, but instead, wanted to be a contributor. Counsel noted that the PSI showed that defendant had reported that he was diagnosed in 2016 with bipolar disorder and depression. At no time during the proceedings did counsel sense that defendant had "foggy thinking" or a disability. When counsel asked defendant about his mental health, defendant replied that it was something he dealt

with every day, but that he tried to keep to himself and read. Counsel stated that defendant was mindful of his mental health and doing something about it. Counsel again emphasized that he was not asking the court to consider the minimum term, but that a sentence of eight years' imprisonment would be fair.

¶ 12    The court asked whether defendant was taking any psychotropic medication. Defendant replied that he was taking "Remerons, Buspars and Benadryls" to help him calm down. Counsel stated that he did not think defendant was taking psychotropic medication, but "more of an anger management type of drug." The court ordered that defendant be evaluated for fitness to be sentenced, and in retrograde, fitness to stand trial. Counsel agreed with the court, but clarified that at no time did he question defendant's fitness.

¶ 13    Following several months of continuances, defendant was found fit to stand trial at the time of his trial and fit for sentencing. The court noted that the report from the clinical psychologist, Dr. Kristin Schoenbach, indicated that defendant had been minimally cooperative with the evaluation and provided vague and incomplete responses to questions. Defendant did not manifest any symptoms consistent with a psychiatric condition or disorder, and his treatment records from Cermak Health Services gave no indication that he evidenced any cognitive impairment during his incarceration. Dr. Schoenbach opined that results from objective psychological testing were strongly indicative of malingering. The psychologist further found that defendant's behaviors during the evaluation were volitional in nature and not the result of a mental illness or cognitive impairment.

¶ 14    The court noted that it also received a report from Dr. Nishad Nadkarni, a staff psychiatrist at Forensic Clinical Services, stating that the doctor was unable to render an opinion

regarding defendant's fitness due to defendant's volitional refusal to cooperate with the clinical interview. The court quoted Dr. Nadkarni's report which stated "As he had done during several previous evaluations at Forensic Clinical Services, today Mr. Foots either claim[s] to have no knowledge or recollection of his legal situation, or he provided misleading information in this regard." The doctor found that defendant's medical records did not indicate any signs or symptoms of major mental illness or cognitive impairment, and that defendant was malingering such impairments based on psychological testing. The court concluded that based on the doctors' reports, there was no *bona fide* issue of fitness, and defendant was fit for trial and sentencing.

¶ 15    The court again asked the parties to present their arguments. In aggravation, the State argued that defendant had been on parole for three months for a Class 2 UUWF conviction when he committed the gun offense in this case. Defendant also had a prior Class 2 burglary conviction for which he was originally sentenced to and serving probation when he committed the prior UUWF offense. The State acknowledged that defendant was to be sentenced in the Class X range and requested a substantial prison term.

¶ 16    In mitigation, defense counsel argued substantially the same as he did previously, again emphasizing the tragic loss of defendant's parents and his strong family ties. Counsel noted that defendant had six family members present in court who had been supportive of him throughout the proceedings. Counsel argued that a sentence of six years at 85% would be appropriate. Defendant declined to make a statement in allocution.

¶ 17    Defendant's PSI shows that in addition to the prior burglary and UUWF convictions, defendant also had a 2009 conviction for indirect criminal contempt for which he served 62 days in jail, a 2011 conviction for reckless conduct for which he served 2 days in jail, 2011

convictions for driving on a suspended or revoked license and operating a motor vehicle without insurance for which he served 30 days in jail, and criminal trespass to land in 2012 for which he was sentenced to 6 months of conditional discharge. Defendant also had two delinquency findings in juvenile court in 2007 and 2009. The PSI further shows that defendant's mother was murdered in 2014 during a robbery attempt on her person. Defendant also reported that he was employed for eight months in 2013 as a maintenance man for a landscaping and snow removal company. He was previously employed for four months in 2012 as a laborer for a construction company. Defendant reported that he joined the Gangster Disciples street gang when he was 13 years old and terminated his affiliation with the gang five years later. Defendant also reported that he was diagnosed with a bipolar/depression condition while in jail in 2016 for which he received monthly treatment at Cermak Hospital and was required to use an unidentified prescription medication daily to stabilize his condition.

¶ 18    The trial court expressly stated that it was taking into consideration the statutory factors in aggravation and mitigation. It also considered the fact that defendant was a relatively young man, that he had family support, that he had some tragedies regarding his parents, and that there were several people in court supporting him. The court further stated that it considered the effect any sentence may have upon defendant's family or dependents. The court noted that, in aggravation, it considered defendant's criminal background. In addition, the court stated that it had to consider the four factors of rehabilitation, incapacitation, punishment and deterrence.

¶ 19    The trial court found it aggravating that defendant attempted to have someone else "take the fall for the gun." The court also found it aggravating that defendant was on parole for less

than three months when he was arrested in this case. The court noted that defendant's prior case was also a gun case. The court further stated:

"I don't know what we can do to Mr. Foots to restore him to useful citizenship. He got probation, he violated his probation, he picked up a gun charge. He was found guilty of the gun charge, got probation, and the gun charge, he was sentenced on, he [*sic*] ran concurrently, two prior Class 2 felonies. And then we have this case where he got caught with a gun again, again three months after he was released on parole.

Also this Court is concerned about the fact that this defendant might have attempted to manipulate the system here, creating psychiatric symptoms that did not exist in order to avoid responsibility or to game the system. That is a small factor that I can consider, it might factor in considering the sentence here is [*sic*] as a repeated violations of law despite the fact that he was given probation, given programs, programs such as probation, programs such as boot camp that attempted to help an individual, a young individual get back on the right track here. Apparently nothing is working. Again within three months, he's caught with a gun.

\*\*\*

While I don't believe any sentence anywhere near the maximum would, in fact, be consistent with the four factors in sentencing that I always consider in all of my cases, I don't believe the minimum would be either. At some point in time he's got to realize that he's got to stop doing this."

¶ 20    The trial court merged the UUWF conviction into the armed habitual criminal conviction and sentenced defendant to a term of 10 years' imprisonment. Defense counsel immediately made an oral motion to reconsider the sentence, which the trial court denied.

¶ 21    On appeal, defendant first contends that his trial counsel rendered ineffective assistance because counsel failed to file a motion to quash arrest and suppress evidence where the police lacked probable cause to arrest him. Defendant argues that the mere fact that Gamez saw him with a gun did not mean that Gamez was witnessing illegal activity. Defendant claims that Gamez had no reason to believe that defendant did not have the legal right to possess a gun, and nothing suggested that any criminal activity was occurring. Consequently, Gamez had no basis to support his immediate arrest of defendant. Defendant argues that there is a reasonable probability that a motion to suppress would have been granted, suppressing the gun and defendant's inculpatory statements, and therefore, the outcome of the trial would have been different had counsel filed such motion.

¶ 22    The State responds that counsel was not ineffective because a motion to suppress would have been futile where the police had probable cause to arrest defendant for unlawful use of a weapon (UUW) (720 ILCS 5/24-1(a)(4) (West 2016)). The State argues that defendant was openly carrying a gun in a vehicle, which constituted UUW because defendant's conduct did not conform with the concealment requirement of the Firearm Concealed Carry Act (Act) (430 ILCS 66/1 *et seq.* (West 2016)).

¶ 23    Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29. To support a claim of ineffective assistance of counsel,

defendant must demonstrate that counsel's representation was deficient, and as a result, he suffered prejudice. *Strickland*, 466 U.S. at 687. Specifically, defendant must show that counsel's performance was objectively unreasonable, and that there is a reasonable probability that the outcome of the proceeding would have been different if not for counsel's error. *Veach*, 2017 IL 120649, ¶ 30. If defendant cannot prove that he suffered prejudice, this court need not determine whether counsel's performance was deficient. *People v. Givens*, 237 Ill. 2d 311, 331 (2010). Moreover, *Strickland* requires defendant to demonstrate actual prejudice, and mere speculation as to prejudice is not sufficient. *People v. Bew*, 228 Ill. 2d 122, 135-36 (2008) (and cases cited therein).

¶ 24    To establish that he was prejudiced by trial counsel's failure to file a motion to suppress, "defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. If a motion to suppress would have been futile, then counsel's failure to file that motion does not constitute ineffective assistance. *Givens*, 237 Ill. 2d at 331.

¶ 25    The fourth amendment of the United States Constitution, which applies to the states through the fourteenth amendment, protects all citizens from unreasonable searches and seizures in their homes, effects and persons. U.S. Const., amend. IV. An arrest secured without a warrant is valid only where it is supported by probable cause. *People v. Grant*, 2013 IL 112734, ¶ 11. Police have probable cause to arrest an individual when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the person has

committed a crime. *Id.* Whether probable cause exists depends on the totality of the circumstances at the time of the arrest. *Id.*

¶ 26     A person commits UUW when he knowingly "[c]arries or possesses in any vehicle" any pistol, revolver, or other firearm, unless the weapon is: (1) broken down in a non-functioning state, (2) not immediately accessible, (3) unloaded and enclosed in a case or other container by a person who has been issued a currently valid Firearm Owner's Identification Card, or (4) carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Act. 720 ILCS 5/24-1(a)(4) (West 2016).

¶ 27     The Act provides that a license holder is permitted to "keep or carry a loaded or unloaded *concealed* firearm on or about his or her person within a vehicle." (Emphasis added.) 430 ILCS 66/10(c)(2) (West 2016). In quoting this statute in his brief, defendant omitted the word "concealed." Defendant points out that during a traffic stop, an officer may request that a passenger in the vehicle disclose if he is in possession of a concealed firearm, request that the passenger present his license to carry a concealed weapon, ask the passenger to identify the location of the concealed firearm, and safely secure the firearm for the duration of the investigative stop. See 430 ILCS 66/10(h) (West 2016). Defendant argues that in this case, Gamez did not make any requests of him, nor did he take temporary possession of the firearm during the traffic stop. Instead, defendant argues, without any reason to suspect him of criminal activity, and with no basis for believing he would not comply with the officer's requests, Gamez removed defendant from the vehicle, handcuffed him, and confiscated the handgun without probable cause, violating his fourth amendment rights. Defendant further points out that the Act defines a "concealed firearm" as "a loaded or unloaded handgun carried on or about a person

completely or mostly concealed from view of the public or on or about a person within a vehicle." 430 ILCS 66/5 (West 2016). Defendant claims that because he possessed the gun inside a vehicle, it was "concealed" as required by the Act, even though it was visible to Gamez. He asserts that the Act does not require that a firearm be hidden from view when inside a vehicle.

¶ 28    This court recently rejected the same argument defendant presents here. See *People v. Balark*, 2019 IL App (1st) 171626. In *Balark*, this court found:

> "Illinois does not allow for open carry of firearms. We cannot agree with an interpretation of the Act in which an individual's conduct in a vehicle would equate with open carry. The name of the Act is the 'Firearm Concealed Carry Act.' 430 ILCS 66/1 (West 2016). The term 'concealed' cannot be read out of the Act where the term is, in essence, the entire purpose of the Act. The Act allows for a licensee to possess a *concealed* firearm on or about his or her person within a vehicle. *** [T]he use of the term 'concealed' to modify firearm indicates the legislative intent for firearms in a vehicle to remain concealed as well as on or about the person within a vehicle. See *id.* § 10(c)(2). If the legislature did not intend for concealment of firearms, then it could have omitted the word from the statutory language. Moreover, under defendant's view, the term 'concealed' is superfluous. When viewing the Act as a whole, we reject an interpretation that renders the term 'concealed' superfluous." *Balark*, 2019 IL App (1st) 171626, ¶ 58.

Based on this finding, the *Balark* court held that "possessing a firearm in one's hand while in a vehicle is not in compliance with possession on or about a person within a vehicle under the Act." *Id.* ¶ 67.

¶ 29    Here, we agree with the analysis and reasoning in *Balark*, and reach the same conclusion. The facts in this case established that when Gamez approached the vehicle, he observed defendant holding a firearm in his hand, attempting to "stuff" the gun inside his waistband behind his belt buckle. Gamez immediately removed defendant from the vehicle, handcuffed him, and recovered the weapon. The record thereby shows that defendant was in possession of a firearm inside a vehicle, and his possession was not concealed as required by the Act. Based on the totality of the circumstances at the time of the arrest, we find that the facts known to Gamez were sufficient to lead him to reasonably believe that defendant had committed a crime, specifically, UUW. Consequently, Gamez had probable cause to arrest defendant. *Grant*, 2013 IL 112734, ¶ 11.

¶ 30    It therefore follows that because the police had probable cause to arrest defendant, a motion to suppress evidence would have been futile. Thus, trial counsel's failure to file such motion did not constitute ineffective assistance. *Givens*, 237 Ill. 2d at 331.

¶ 31    Defendant next contends that his 10-year sentence for being an armed habitual criminal is excessive. Defendant argues that the nature of the offense did not warrant such a lengthy sentence where the facts of the case show no violence or suggestion of criminal intent. Defendant further claims that the trial court failed to consider his mitigating evidence which showed that all of his prior convictions were for nonviolent offenses, his father died when defendant was 15 years old and his mother was murdered during a robbery attempt, and his PSI shows that he takes prescription medication for bipolar disorder and depression. In addition, defendant argues that his strong family ties show that he has significant potential for rehabilitation. Defendant asserts

that this court should reduce his sentence closer to the minimum term of six years or remand his case for resentencing.

¶ 32     The State responds that defendant's sentence is not excessive where it is within the statutory sentencing range and only four years above the minimum term. The State argues that defendant's act of holding a loaded firearm in his hand with one round in the chamber ready to fire was dangerous and threatening. The State further argues that the record shows that the trial court considered all of defendant's mitigating evidence and concluded that defendant was unwilling to rehabilitate himself after his prior offenses, which justified the 10-year sentence.

¶ 33     The offense of being an armed habitual criminal is a Class X felony with a statutory sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/24-1.7 (b) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). The trial court has broad discretion in imposing an appropriate sentence, and where, as here, that sentence falls within the statutory range, it will not be disturbed on review absent an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). An abuse of discretion exists where a sentence is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 34     The Illinois Constitution mandates that criminal penalties be determined according to the seriousness of the offense, and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. Ligon*, 2016 IL 118023, ¶ 10. In light of these objectives, "[t]he trial court is charged with fashioning a sentence based upon the particular circumstances of the individual case, including the nature of the offense and the character of the defendant." *People v. Fern*, 189 Ill. 2d 48, 55 (1999). The court's sentencing decision is entitled to great

deference because, having observed the defendant and the proceedings, it had the opportunity to weigh defendant's demeanor, credibility, general moral character, mentality, habits, social environment and age. *Alexander*, 239 Ill. 2d at 213. "The sentencing judge is to consider 'all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding.' " *Fern*, 189 Ill. 2d at 55, quoting *People v Barrow*, 133 Ill. 2d 226, 281 (1989). The trial court need not give defendant's potential for rehabilitation greater weight than the seriousness of the offense. *People v. Anderson*, 325 Ill. App. 3d 624, 637 (2001).

¶ 35    Here, we find no abuse of discretion by the trial court in sentencing defendant to a term of 10 years' imprisonment, which falls within the statutory range, is only 4 years above the minimum term, and 20 years below the maximum. The trial court expressly stated that it considered the statutory factors in aggravation and mitigation. The record shows that the court was very concerned with defendant's potential for rehabilitation in light of his criminal history which included a probation violation, a prior UUWF conviction, and the fact that defendant had been on parole for less than three months when he was arrested for possessing a gun in this case. The court noted that defendant repeatedly violated the law despite being given opportunities with probation and boot camp. The court found that prior rehabilitation efforts had not worked. The court also found it aggravating that defendant attempted to have someone else "take the fall for the gun," and that he may have attempted to manipulate the system by creating psychiatric symptoms that did not exist to avoid responsibility. The record therefore shows that, based on its consideration of all of these factors, the court determined that defendant's potential for rehabilitation was greatly outweighed by the aggravating factors, and that the 10-year sentence

was appropriate and necessary to attempt to rehabilitate defendant and restore him to useful citizenship. *Ligon*, 2016 IL 118023, ¶ 10.

¶ 36    Defendant's claim that the trial court failed to give adequate consideration to his mitigating evidence is belied by the record. The court expressly stated that it considered the fact that defendant was a relatively young man, that he had suffered some tragedies with his parents' deaths, and that he had family support with several people present in court supporting him. The court also stated that it considered the effect any sentence would have upon defendant's family and dependents. Furthermore, as noted above, the court found that defendant's claim of mental illness may have been an attempt to avoid responsibility and "game the system." The trial court had the opportunity to observe defendant during the proceedings and to weigh his demeanor, credibility, and general moral character. *Alexander*, 239 Ill. 2d at 213. Consequently, we give great deference to the trial court's assessment of defendant's potential for rehabilitation.

¶ 37    This court will not reweigh the sentencing factors or substitute our judgment for that of the trial court. *Alexander*, 239 Ill. 2d at 213. Based on the record before us, we cannot say that the sentence imposed by the court is excessive, manifestly disproportionate to the nature of the offense, or that it departs significantly from the intent and purpose of the law. *Fern*, 189 Ill. 2d at 56. Accordingly, we find no basis to disturb the trial court's judgment.

¶ 38    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.