# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Grant*, 2013 IL 112734

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONNIE GRANT, Appellee. |
| Docket No. | 112734 |
| Filed | February 7, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | There was probable cause to arrest for the municipal ordinance violation of soliciting unlawful business on a public way where police saw defendant yell "dro, dro" at a passing vehicle and there was testimony that this is slang for the sale of cannabis. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Maura Slattery Boyle, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on Appeal    Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Brian A. McNeil, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

Justices    JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    After a stipulated bench trial, the circuit court of Cook County found defendant Ronnie Grant guilty of Class 4 possession of cocaine and sentenced him to three years' imprisonment. On appeal, defendant argued police lacked probable cause to arrest him, and the circuit court erred in denying his motion to quash arrest and suppress evidence. A divided appellate court agreed, and reversed defendant's conviction and vacated his sentence. 2011 IL App (1st) 091107. We allowed the State's petition for leave to appeal, and now reverse the judgment of the appellate court.

¶ 2                                BACKGROUND

¶ 3    Defendant's conviction arose from his 2008 arrest for soliciting unlawful business on a public way, a municipal offense. Chicago Municipal Code § 10-8-515 (added Apr. 1, 1998). After his arrest, defendant was initially charged with possession of less than 15 grams of cocaine, possession of cannabis, and soliciting unlawful business. Subsequently, in a two-count information, the State formally charged him with possession of cocaine with intent to deliver within 1,000 feet of a Chicago Housing Authority (CHA) building (count I), and possession of cocaine with intent to deliver (count II).

¶ 4    Prior to trial, defendant moved to quash his arrest and suppress evidence. At the hearing on the motion, Chicago police officer Stephen Hefel testified as the only witness. At about 11 p.m. on November 29, 2008, Hefel was one of several officers involved in a narcotics suppression mission. He was in the front passenger seat of an unmarked car, the first of two police vehicles traveling west on Fifth Avenue in Chicago. From a distance of about 100 to 150 feet, Hefel spotted defendant standing at the entrance of a CHA building, in an area known as a "highly used narcotics sales spot." Hefel testified that this particular area was known as "the weed spot." When Hefel was about 20 to 25 feet from defendant, he

-2-

"specifically observed" defendant yelling "dro, dro" to a passing vehicle. According to Hefel, who was familiar with terms used in the sale of narcotics, "dro, dro" is "basically said for the sale of cannabis." Hefel explained that he had been a police officer for nearly three years, had made "[a] couple hundred" narcotics arrests, and had learned the meaning of "dro, dro" from "numerous" past arrestees. Hefel testified further that after observing defendant yell "dro, dro," he conferred with the other two officers in his car. The three of them agreed that "that's what he said," and determined they would detain defendant.

¶ 5    Hefel's car pulled up to a spot a few feet from defendant, who looked in the officers' direction but did not run. "Basically it was as if he just froze." The three officers exited the car and arrested defendant for solicitation of unlawful business. Hefel acknowledged that defendant had nothing in his hands, and Hefel did not see defendant drop anything. Hefel also acknowledged he did not observe defendant involved in any narcotics sales. A custodial search of defendant recovered four plastic bags containing a green leafy substance the officers believed to be cannabis. Defendant was then taken to the police station, where a second custodial search recovered a plastic bag from defendant's rear waistband. That bag contained four smaller bags of a white rock-like substance believed to be cocaine. Police also recovered $160. Hefel acknowledged they did not have an arrest warrant or a search warrant.

¶ 6    Defendant argued the police lacked probable cause that he violated the city ordinance and their search incident to arrest was unwarranted. The circuit court disagreed and denied defendant's motion. The court found Officer Hefel testified "credibly," noting in particular his three years' experience as a police officer and his "numerous narcotics arrests." The court also noted that defendant was in a "high narcotic[s] area" when he was detained.

¶ 7    The State dismissed count I of the information, and removed the intent language from count II. The case then proceeded to a stipulated bench trial on the amended charge of possession of a controlled substance. In addition to Hefel's testimony, the parties stipulated to the chain of custody of the four bags believed to contain cocaine, and to the results of the crime lab analysis that one of the bags tested positive for less than 0.1 grams of cocaine and the total estimated weight of all four bags was 0.3 grams. Defendant was found guilty of Class 4 possession of cocaine (720 ILCS 570/402(c) (West 2008)) and sentenced to three years' imprisonment. On appeal, the appellate court majority reversed the denial of defendant's motion to quash and suppress, concluding the facts elicited from Officer Hefel did not constitute probable cause that defendant violated the city ordinance. 2011 IL App (1st) 091107, ¶¶ 34-35, 37. There was thus no probable cause to support defendant's warrantless arrest. *Id*. ¶ 35. The court also reversed defendant's conviction outright because "[w]ithout the evidence that should have been suppressed, the State cannot prove the defendant's guilt." *Id*. ¶ 37.

¶ 8                                    ANALYSIS

¶ 9    Section 10-8-515 of the Chicago Municipal Code, titled "Soliciting unlawful business," provides, in pertinent part:

    "(a) No person may: (i) stand upon, use or occupy the public way to solicit any unlawful business; or (ii) interfere with or impede any pedestrian or anyone in a

vehicle on the public way, for the purpose of soliciting any unlawful business.

(b) As used in this section, 'unlawful business'[ ] means any exchange of goods or services for money or anything of value, where the nature of the goods or services, or the exchange thereof, is unlawful. Unlawful business includes, but is not limited to, prostitution or the illegal sale of narcotics. For purposes of this section, 'soliciting' may be by words, gestures, symbols or any similar means." Chicago Municipal Code § 10-8-515(a), (b).

¶ 10    The parties agree that probable cause for arrest may be based on a violation of a municipal ordinance. Accordingly, we do not address that issue. There remains the question of whether police had probable cause to arrest defendant in this instance.

¶ 11    An arrest executed without a warrant is valid only if supported by probable cause. *People v. Jackson*, 232 Ill. 2d 246, 274-75 (2009). Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. *People v. Wear*, 229 Ill. 2d 545, 563 (2008). In determining whether the officer had probable cause, his factual knowledge, based on law enforcement experience, is relevant. *People v. Smith*, 95 Ill. 2d 412, 419-20 (1983). The existence of probable cause depends upon the totality of the circumstances at the time of the arrest. *Wear*, 229 Ill. 2d at 564. Whether probable cause exists is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt. *People v. Hopkins*, 235 Ill. 2d 453, 472 (2009).

¶ 12    In reviewing a ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review. *Id.* at 471. While we accord great deference to the trial court's factual findings, and will reverse those findings only if they are against the manifest weight of the evidence, we review *de novo* the court's ultimate ruling on a motion to suppress involving probable cause. *Jackson*, 232 Ill. 2d at 274.

¶ 13    Here, section 10-8-515 sets out the elements of the offense of soliciting unlawful business, stating that no person may stand upon the public way to solicit any unlawful business. It specifies that the illegal sale of narcotics constitutes unlawful business and states that "soliciting" may be accomplished by words, which were the means employed here. Officer Hefel's testimony at the pretrial hearing established that defendant yelled "dro, dro" to a passing vehicle, and that "dro, dro" was "basically said for the sale of cannabis." See *United States v. Foxx*, 544 F.3d 943, 947 (8th Cir. 2008) (" 'Dro' is slang for higher quality marijuana or hydroponic marijuana, according to an officer who testified at trial."). Hefel's testimony on these points was unrebutted. Defendant made no objection to Hefel's explanation of "dro, dro" based on his law enforcement experience.

¶ 14    This is not surprising. Courts in other jurisdictions allow such testimony by police officers. In *State v. Mason*, 2004-Ohio-4896, ¶¶ 25-28, the court held there was no error in allowing a police detective to testify regarding the meaning of the term "40," which meant " '$40 worth of crack cocaine.' " The court stated:

" '[A] police officer is permitted to testify concerning his own expertise as to the behavioral and language patterns of people commonly observed on the streets,

including people associated with criminal activities, in a manner helpful for the jury's clear understanding of the factual issues involved. In particular, the police officer's knowledge of the slang terminology usually accompanying drug transactions is permissible.' " *Id.* ¶ 34.

See also *State v. Paul*, 2002-Ohio-591, 2002 Ohio App. LEXIS 551, at *26 ("Because some police officers, like the undercover officer in this case, make thousands of drug arrests, they bring a great deal of experience to a case. The courts generally permit the police to explain why they believe that certain actions by an accused constituted drug trafficking."). Accord *Noe v. United States*, 601 F.3d 784, 787, 792 (8th Cir. 2010) (affirming denial of *habeas* petition based in part on police detective's testimony that "cutie pie" is slang for a quarter pound and that "seven" refers to $7,000 and that, based on that price and the quantity mentioned (two cutie pies), drug being discussed was methamphetamine); *Johnson v. State*, 383 S.E.2d 146, 148 (Ga. Ct. App. 1989) (finding no reversible error in admission of officer's testimony concerning his opinion of the definition of slang words used by defendant in regard to the taking of drugs); *Turner v. Commonwealth*, No. 1754-04-3, 2005 Va. App. LEXIS 368, at *4-8 (Va. Ct. App. Sept. 27, 2005) (affirming conviction based in part on police officer's testimony that street slang term "a twenty" meant cocaine) (collecting cases).

¶ 15    Here, Officer Hefel observed defendant yelling "dro, dro" to a passing vehicle, and thus witnessed him committing the offense of solicitation of unlawful business in violation of section 10-8-515. Hefel had probable cause to arrest defendant. See *Wear*, 229 Ill. 2d at 563. We agree with the State that the circuit court properly denied defendant's motion to quash arrest and suppress evidence.

¶ 16    Notwithstanding the foregoing, defendant contends the facts known by police at the time of his arrest were insufficient to constitute probable cause. Defendant notes, for example, that he said "dro, dro" only once, to a single passing car. In defendant's view, this makes it less likely that he was soliciting unlawful business, and more likely that he was specifically addressing a single car for an innocent reason such as "trying to get the attention of someone in that car known as 'Dro.' " We disagree. Nothing in the officer's testimony supports the view that the officers acted unreasonably under the circumstances. See *Wear*, 229 Ill. 2d at 563-64 (probable cause exists when facts known to officer would lead reasonably cautious person to believe arrestee committed a crime).

¶ 17    Defendant next argues, similarly, that a single iteration of "dro, dro," without repetition, is insufficient to support probable cause. This argument fails as well. It is premised on *People v. Taylor*, 165 Ill. App. 3d 64 (1987), and *People v. Rucker*, 346 Ill. App. 3d 873 (2003), where police observed a series of seemingly innocuous actions which, when taken together, provided probable cause to believe a crime was being committed. "Although an isolated act may appear innocent, a series of similar transactions, by virtue of the repetition, may be sufficient to support an arrest." *Taylor*, 165 Ill. App. 3d at 67. However, repetition is unnecessary where the police possess more specific information that a crime is being committed. See *People v. O'Neal*, 176 Ill. App. 3d 823 (1988) (upholding probable cause where police overheard voice later identified as defendant's stating he would exchange money for five grams of heroin, and then saw defendant handing plastic bag to codefendant). The facts here are stronger than in *O'Neal* because here the police actually observed

defendant committing the offense of solicitation of unlawful business. Defendant's reliance on *Taylor* and *Rucker* is misplaced.

¶ 18    Turning to his presence in a known high-crime area, defendant argues, based on *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), and *People v. Pence*, 225 Ill. App. 3d 1061, 1064 (1992), that such presence alone does not establish probable cause. But defendant was not arrested for merely being present at a known narcotics sales spot. Instead, his location was just one factor contributing to probable cause. The facts adduced at the pretrial hearing established that he yelled "dro, dro" to a passing vehicle and thus was not arrested merely because he was present in a high-crime area. The cases relied upon by defendant are inapposite.

¶ 19    Defendant next maintains that even though police knew he was in a known high-crime area when he yelled "dro, dro" to a passing vehicle, the police were aware of other factors indicating he was not involved in criminal activity: they did not observe defendant engaging in any transactions, they did not see anything in defendant's hands, and defendant did not flee when the police approached. According to defendant, the information the police possessed thus was, at most, ambiguous or equivocal, and therefore insufficient to support probable cause. Defendant essentially argues that because some of the traditional indicia of drug activity were absent here, the police should have taken a wait-and-see approach to determine what, if anything, occurred next. In support of this argument, defendant relies on *People v. Lee*, 214 Ill. 2d 476 (2005), *People v. Marchel*, 348 Ill. App. 3d 78 (2004), and *People v. Rainey*, 302 Ill. App. 3d 1011 (1999). Defendant's reliance on these cases is misplaced.

¶ 20    In *Rainey* and *Marchel*, for example, the defendants were arrested after they were observed making "furtive" movements toward their mouths. In each case, the appellate court concluded the defendant's conduct was merely ambiguous or equivocal, and could not provide the basis for probable cause. *Rainey*, 302 Ill. App. 3d at 1015; *Marchel*, 348 Ill. App. 3d at 80-81.

¶ 21    The case at bar is distinguishable from *Rainey* and *Marchel*, where the defendants were arrested for alleged possessory drug offenses based on equivocal conduct. Here, by contrast, defendant was arrested for the ordinance violation of soliciting unlawful business after he was observed committing that offense.

¶ 22    Defendant's argument here is misguided because it assumes that probable cause for the ordinance violation of soliciting unlawful business also requires some of the traditional indicia of drug possession or sales. This is incorrect. What is required are facts sufficient to lead a reasonably cautious person to believe that the arrestee solicited unlawful business in violation of section 10-8-515. Here, the facts known by the officers at the time of defendant's arrest met this requirement, even without the traditional indicia of drug activity.

¶ 23    In sum, we agree with the State that the facts known to police at the time of defendant's arrest provided them with reasonable grounds to believe defendant was committing a criminal offense, the soliciting of unlawful business, and thus constituted probable cause for defendant's arrest. We reverse the judgment of the appellate court, which reversed the denial of defendant's motion to quash arrest and suppress evidence and reversed defendant's conviction outright.

¶ 24                                    CONCLUSION

¶ 25       For the reasons set forth above, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.


¶ 26       Appellate court judgment reversed.

¶ 27       Circuit court judgment affirmed.