2020 IL App (1st) 170899-U

FIFTH DIVISION
August 28, 2020

No. 1-17-0899

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CR 9602 |
| CHRISTOPHER TURNIPSEED, | ) ) | |
| | ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held:*  The police had probable cause to arrest the defendant and to seize and search a handgun they observed him handling inside a vehicle. The defendant's conviction is reversed because the circuit court improperly admitted and relied on hearsay evidence establishing that the defendant illegally possessed the weapon. Considering all the evidence presented at trial, including the evidence admitted in error, retrial of this case does not present double jeopardy concerns. We reverse and remand for a new trial.

¶ 2   Defendant Christopher Turnipseed was charged with one count of defacing identification marks of firearm and nine counts of aggravated unlawful use of a weapon (AUUW). After a bench trial, the circuit court found defendant guilty of nine counts of AUUW, but acquitted him

of defacement. The court sentenced him to 18 months in prison. On appeal, defendant argues that the police illegally seized the firearm without probable cause and that the State improperly introduced hearsay evidence to establish he illegally possessed the gun. The State concedes that the hearsay evidence was improperly admitted, but argues this case should be remanded for retrial. Defendant contends that he is entitled to an outright reversal of his conviction and that double jeopardy precludes retrial because the State presented insufficient evidence to convict him. We reverse and remand for a new trial.

¶ 3                                    BACKGROUND

¶ 4      On June 4, 2016, Chicago police officers conducted a traffic stop of a minivan carrying defendant as a passenger. One of the officers observed defendant handling a gun inside the vehicle. As the officer approached the minivan, he could see that the gun had been placed on top of a laundry bag in front of the back seat. Another officer recovered the gun and examined it, finding that the identification mark had been scratched off. Defendant was arrested and charged with AUUW and defacing the weapon. The indictment alleged that defendant lacked a Firearm Owner's Identification (FOID) card, a concealed carry license (CCL), or both types of licenses.

¶ 5      Defendant moved to quash his arrest and suppress evidence, challenging the legality of the stop, arrest, search, and seizure. The circuit court conducted a hearing on the motion simultaneously with the bench trial.

¶ 6      Chicago police officer Treacy[1] testified that on June 4, 2016, he was patrolling near the area of 3900 West 14th Street with his partners, Officers Salgado and Ramirez. At 9:04 p.m., he conducted a traffic stop of a minivan with an inoperable taillight. As he approached the driver's side of the vehicle, he illuminated the interior with his flashlight. Officer Treacy saw defendant, who sat in the front passenger seat, reach back towards his left and place a two-tone automatic

---

[1]      The record does not include any of the testifying police officers' first names or initials.

handgun on a laundry bag sitting behind the driver's seat. Officer Treacy observed the frame of the gun, particularly the top portion of the weapon. At that point, Officer Treacy alerted his partners of the presence of a firearm by stating, "143 Adam," which is police terminology for a handgun. Officer Salgado was approaching the vehicle from the passenger's side and Officer Ramirez remained at the back of the minivan.

¶ 7     Officer Treacy then asked the driver to step out of the vehicle. Officer Salgado asked defendant to exit the minivan. Officer Ramirez recovered the semiautomatic nine millimeter Ruger handgun that had been placed on top of the laundry bag behind the driver's seat. Officer Treacy advised defendant of his *Miranda* rights. Two more Chicago police officers arrived at the scene to assist and speak to defendant. Officer Treacy issued a traffic citation to the driver of the minivan for driving without a taillight.

¶ 8     Officer Treacy also described a related incident involving defendant's ex-girlfriend, who claimed that defendant had taken items from her house. Officer Treacy described communications with other officers investigating the missing items and efforts to bring her to the scene to identify those items. He became aware of this related incident only after he had already conducted the traffic stop of the minivan.

¶ 9     Officer Ramirez also testified about the traffic stop conducted on June 4, 2016. He stood toward the rear of the minivan as Officer Treacy approached the driver's side. Officer Treacy announced "143 Adam" as he moved closer to the driver's side door and then told the occupants to raise their hands and step out of the vehicle. Officer Ramirez did not observe defendant place the gun onto the laundry bag.

¶ 10     As Officer Treacy detained the driver, he directed Officer Ramirez to the handgun that defendant had placed in the rear of the vehicle. Officer Ramirez recovered the gun from atop of a

laundry bag sitting in the rear of the vehicle. He described the handgun as a nine millimeter with ten live rounds. When asked if he was able to observe a serial number on the weapon, Officer Ramirez replied that he did not. Normally, a serial number can be found on the side rail or behind the weapon and, in this case, he saw scratches on the gun. He also observed drug paraphernalia, a plasma television set, an air conditioner, and other personal items in the minivan. Officer Ramirez spoke to defendant about the other items found in the minivan and defendant asked if they could be returned to his ex-girlfriend. Defendant provided Officer Ramirez his ex-girlfriend's contact information and she arrived at the scene to pick up her belongings.

¶ 11    Officer Theodore testified that he and his partners arrived at the scene after Officer Treacy had conducted the traffic stop. He asked defendant how he obtained the handgun. Defendant told Officer Theodore, "I took the gun from my baby mama's house after she kicked me out. The gun is her boyfriend's, her new boyfriend's, so I took it."

¶ 12    After the police officers' testimony, defendant argued his motion to suppress. The circuit court found the minivan "was legitimately stopped for a traffic violation," and that in plain view, the officers saw defendant place the gun on a laundry bag. The court denied defendant's motion, finding that, "looking into the car when it was stopped for a traffic violation and making observations I don't believe is offensive to the Fourth Amendment."

¶ 13    The State called Bob Radmacher as its next witness. Radmacher serves as the application processing unit supervisor for the Illinois State Police firearms services. The application processing unit processes all incoming applications for FOID cards, keeps records of the applications, and prints the cards. Radmacher's department does not review, approve, or reject applications.

¶ 14 When subpoenaed, Radmacher's department conducts record searches to determine whether an individual possesses a FOID card or a CCL. His department ran a search to determine whether defendant owned a FOID card or CCL. Defendant objected to this line of questioning because the search was not based on Radmacher's personal knowledge. The circuit court stated, "No. He's talking about a search of records. These are business records. Overruled." Radmacher testified that the department did perform a search and found defendant possessed neither a FOID card nor CCL.

¶ 15 On cross-examination, Radmacher testified that he did not personally perform the search of defendant's records. One of his employees performed the search and told him the results of that search. On redirect examination, Radmacher clarified that he directed the employee to perform the search and that the application records are kept in the course of business for the Illinois State Police. The circuit court verified that the employee designated to perform the search was based in Springfield.

¶ 16 After the State rested, defendant moved for a finding of not guilty, arguing that the State failed to meet its burden of proof. The State argued that Radmacher's hearsay testimony was admissible under the business records exception. Defendant contended that the State was required to present the witness that actually conducted the records search to establish that he did not have a FOID card or CCL.

¶ 17 The circuit court found Radmacher's testimony to be credible and compelling. The court noted that defendant raised the issue of sufficiency of the evidence "insofar as recordkeeping of the -- whether or not his client had a Concealed Carry card or a FOID card." The court continued:

"I am quite mindful that our law -- our common law and statutory law regarding business records were written a long time ago and we've got a computer age now that has changed the way records are kept and how they are maintained by Government entities, and not just Government entities, but private entities and private citizens as well.

There was a witness that acknowledged [he] wasn't the maker of the records but was what can be described as a keeper of the records. And he did make an investigation, although he did rely on other people as well. It was part and parcel of the way things are done. I do believe that it is compelling enough and it does meet statutory criteria and meets factual criteria as well as far as I'm concerned, that there was an investigation done which showed no records for [defendant]."

¶ 18    The circuit court found defendant guilty of AUUW, but not guilty of defacing the weapon. The court denied defendant's posttrial motion, which challenged the sufficiency of the evidence and argued that Radmacher had offered "unreliable hearsay." The court sentenced defendant to 18 months in prison. This appeal followed.

¶ 19                                    ANALYSIS

¶ 20    Defendant argues that the police violated his rights under the fourth amendment by arresting him and seizing and examining the handgun recovered from the minivan without probable cause. He contends that the State improperly presented double hearsay testimony to establish he illegally possessed the handgun during the traffic stop. He seeks an outright reversal of his conviction because Radmacher's testimony was the only evidence presented to establish the elements necessary for a guilty finding of AUUW. He also argues that he was denied his

sixth amendment right of confrontation when the State used testimonial hearsay evidence to establish his illegal possession of the handgun.

¶ 21    The State concedes that admission of Radmacher's hearsay testimony was error because it violated defendant's confrontation rights under *People v. Diggins*, 2016 IL App (1st) 142088. The State also concedes that the admission of Radmacher's testimony under the business records exception was error. However, the State argues that defendant must be retried rather than be granted an outright reversal of conviction. Defendant responds that the State presented insufficient evidence at trial and, therefore, his conviction should be reversed without retrial. We address these issues in turn.

¶ 22                    Motion to Quash Arrest and Suppress Evidence

¶ 23    Defendant first argues that the police lacked probable cause for the seizure and search of the handgun and, therefore, the circuit court erred when it denied his motion to quash arrest and suppress evidence. He contends that the State's case relied entirely on the officer's removal and examination of the handgun. At that time, mere possession of a weapon was not illegal under *People v. Aguilar*, 2013 IL 112116. He contends the State failed to present evidence that he was involved in any criminal activity at the time of the traffic stop. Defendant also argues that the "plain view" rule does not apply here because it was not immediately apparent that the handgun was contraband. Further, defendant contends Officer Ramirez conducted an illegal search by examining the handgun for serial numbers after recovering it from the minivan. He argues that Officer Ramirez's actions violated his fourth amendment rights and the appropriate remedy warrants suppression of the handgun and all the fruits of the illegal seizure and search under *Wong Sung v. United States*, 371 U.S. 471 (1963).

¶ 24 A reviewing court applies a two-part standard of review to a circuit court's ruling on a motion to quash arrest and suppress evidence. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). We defer to a circuit court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *Id.* However, a reviewing court is free to undertake its own assessment of the facts in relation to the issues presented and draw its own conclusions in deciding what relief, if any, should be granted. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review *de novo* the circuit court's ultimate legal ruling on a motion to suppress. *Id.*

¶ 25 The United States and Illinois Constitutions guarantee citizens the right against unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 12. However, our supreme court has recognized three types of police-citizen encounters that do not constitute an unreasonable seizure: (1) arrests, which must be supported by probable cause; (2) a brief investigative stop, also known as a *Terry* stop; and (3) encounters that do not involve coercion or detention and therefore do not implicate fourth amendment interests. *Luedemann*, 222 Ill. 2d at 544.

¶ 26 An arrest secured without a warrant is valid only where it is supported by probable cause. *People v. Grant*, 2013 IL 112734, ¶ 11. Police have probable cause to arrest an individual when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the person has committed a crime. *Id.* Whether probable cause exists depends on the totality of the circumstances at the time of the arrest. *Id.* In addition, the existence

of probable cause "is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt. *Id*.

¶ 27    A person commits AUUW when he knowingly "[c]arries on or about [his] person or in any vehicle or concealed on or about [his] person except when on [his] land or in [his] abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm," or the handgun possessed "has not been issued a currently valid license under the Firearm Concealed Carry Act," or "the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1.6(a)(1), (a)(3)(B-5), and (a)(3)(C) (West 2016).

¶ 28    The Firearm Concealed Carry Act (Act) (430 ILCS 66/5 (West 2016)) defines a concealed handgun as "a loaded or unloaded handgun carried on or about a person completely or mostly concealed from view of the public or on or about a person within a vehicle." Under the Act, a CCL permits the licensee to "(1) carry a loaded or unloaded concealed firearm, fully concealed or partially concealed, on or about his or her person; and (2) keep or carry a loaded or unloaded *concealed* firearm on or about his or her person within a vehicle." (Emphasis added.) *Id*. § 10(c). If an officer initiates an investigative stop, upon the request of the officer, a licensee must disclose to the officer that he is in possession of a *concealed* firearm under the Act or present his license to the officer and, upon request, identify the location of the concealed firearm. (Emphasis added.) *Id*. § 10(h). Further, during a traffic stop, any passenger within the vehicle who is a licensee must comply with the disclosure requirements. *Id*.

¶ 29    In this case, defendant argues that the police lacked any additional information to conclude his possession of the gun was evidence of the commission of a crime. Defendant

contends that the traffic stop did not involve any criminal activity and that his placement of the gun on top of the laundry bag de-escalated the situation, while at the same time, not concealing the gun's presence. He argues that the handgun was "concealed" within the plain meaning of the statutory definition under the Act because it was "on or about [his] person" inside the vehicle.

¶ 30    This court recently rejected a similar argument in *People v. Balark*, 2019 IL App (1st) 171626. In *Balark*, this court found:

> "Illinois does not allow for open carry of firearms. We cannot agree with an interpretation of the Act in which an individual's conduct in a vehicle would equate with open carry. The name of the Act is the 'Firearm Concealed Carry Act.' 430 ILCS 66/1 (West 2016). The term 'concealed' cannot be read out of the Act where the term is, in essence, the entire purpose of the Act. The Act allows for a licensee to possess a *concealed* firearm on or about his or her person within a vehicle. * * * [T]he use of the term 'concealed' to modify firearm indicates the legislative intent for firearms in a vehicle to remain concealed as well as on or about the person within a vehicle. See *id.* § 10(c)(2). If the legislature did not intend for concealment of firearms, then it could have omitted the word from the statutory language. Moreover, under defendant's view, the term 'concealed' is superfluous. When viewing the Act as a whole, we reject an interpretation that renders the term 'concealed' superfluous." (Emphasis added.) *Balark*, 2019 IL App (1st) 171626, ¶ 58.

¶ 31    Based on this finding, the *Balark* court held that "possessing a firearm in one's hand while in a vehicle is not in compliance with possession on or about a person within a vehicle under the Act." *Id.* ¶ 67.

¶ 32   Here, we agree with the analysis and reasoning in *Balark* and reach the same conclusion. The facts in this case establish that police officers conducted a valid traffic stop. Then, as Officer Treacy approached the minivan, he observed defendant place a two-tone automatic handgun on a laundry bag sitting behind the driver's seat. Officer Treacy announced the presence of the firearm and Officer Salgado asked defendant to step out of the vehicle. Officer Ramirez recovered the weapon and inspected it. Therefore, the record shows that defendant was in possession of a handgun inside a vehicle, and his possession was not concealed as required by the Act. Based on the totality of the circumstances at the time of his arrest, we find the facts known to the police officers at the time of the arrest were sufficient to lead them to reasonably believe that defendant had committed a crime, specifically, AUUW. Consequently, the officers had probable cause to arrest defendant. *Grant*, 2013 IL 112734, ¶ 11. Furthermore, because the officers had probable cause that defendant had committed AUUW, they likewise had probable cause to search the weapon they recovered. We thus find no error in the circuit court's decision to deny defendant's motion to quash arrest and suppress evidence.

¶ 33                                  Double Jeopardy Concerns

¶ 34   Defendant next argues that his conviction for AUUW rested solely on hearsay evidence that he lacked permission to carry a handgun. He contends that his conviction should be entirely reversed because the State failed to meet its burden to prove him guilty of AUUW beyond a reasonable doubt. He does not claim error in admitting the hearsay. He instead argues the State failed to meet its burden because the double hearsay testimony from Radmacher was demonstrably unreliable. Defendant contends double jeopardy does not allow a defendant to be retried when the evidence at trial was insufficient.

¶ 35    The State concedes that Radmacher's hearsay testimony was admitted in error and that its admission violated defendant's confrontation rights under the sixth amendment. Further, the State concedes that the admission of Radmacher's testimony under the business records exception was also error. The State responds, however, that this case should be remanded for retrial because this court is required to weigh all the evidence, including the improperly admitted evidence, to determine whether all of the evidence is sufficient to sustain a conviction.

¶ 36    We accept the State's concession and agree that the admission of Radmacher's hearsay testimony was error requiring reversal. We now determine whether the cause should be remanded for retrial.

¶ 37    Under the fifth amendment to the United States Constitution, no person may "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. Similar provisions also exist in the Illinois Constitution (see Ill. Const. 1970, art. I, § 10) and in state statutes. See 720 ILCS 5/3-4(a) (West 2016). Our supreme court has explained:

> "The cornerstone of the double jeopardy clause is 'that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *People v. Williams*, 188 Ill. 2d 293, 307 (1999) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)).

¶ 38    Although the double jeopardy clause forbids the retrial of a defendant to afford the State another opportunity to present evidence it failed to present in the first trial, it "does not preclude retrial when a conviction has been overturned because of an error in the trial proceedings."

*People v. Drake*, 2019 IL 123734, ¶ 20. But if the evidence presented at the first trial was insufficient to support the defendant's conviction, he cannot be retried. *Id.* "[F]or purposes of double jeopardy *all* evidence submitted at the original trial may be considered when determining the sufficiency of the evidence." (Emphasis added.) *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). That is to say, even though Radmacher's hearsay testimony was admitted in error, in determining whether the double jeopardy clause forbids a retrial, we nevertheless consider those very statements. See *People v. Lopez*, 229 Ill. 2d 322, 367 (2008) (for purposes of double jeopardy, "we consider whether the evidence presented at trial, including the now-suppressed handwritten statement, was sufficient to convict"). If there was sufficient evidence presented at the first trial to support the defendant's conviction, retrial is the proper remedy. *Drake*, 2019 IL 123734, ¶ 21. In considering the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lopez*, 229 Ill. 2d at 367.

¶ 39    In this case, when considering all the evidence submitted at trial, including the discounted hearsay evidence, we find that a rational trier of fact could have found the essential elements of AUUW beyond a reasonable doubt and, therefore, we remand this cause for a new trial. *Drake*, 2019 IL 123734, ¶ 21; *Olivera*, 164 Ill. 2d at 393, 396.

¶ 40                           CONCLUSION

¶ 41    We reverse the judgment of the circuit court of Cook County and remand this case for a new trial.

¶ 42    Reversed and remanded.