2022 IL App (1st) 200660-U

No. 1-20-0660

Order filed February 8, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 96 CR 30301 |
| | ) | |
| MAURICE HARDAWAY, | ) | The Honorable |
| | ) | Arthur F. Hill, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly denied defendant's motion for leave to file a successive
postconviction petition where he failed to meet the requirements of the cause and
prejudice test.

¶ 2    Defendant Maurice Hardaway appeals from the circuit court's order denying him leave to

file a successive *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq*. (West 2018)). On appeal, he contends the court erred because the *pro se* petition raised a "viable claim" that his warrantless arrest was unconstitutional. We affirm.

¶ 3      Following a 1999 jury trial, defendant was found guilty of first degree murder, attempted murder, and home invasion, and sentenced to life in prison. We relate only the facts relevant to the instant appeal.

¶ 4      Defendant, Jermaine Daniels, and Derwin Wright were arrested following a shooting early on October 21, 1996, that left James Scott and Ronald Goodwin dead, and Arlene Owens with a gunshot wound to the head.

¶ 5      Defendant filed a motion to quash arrest and suppress statement. At the hearing on the motion, trial counsel argued that defendant was "illegal[ly]" arrested without probable cause and a warrant.

¶ 6      Chicago police sergeant Louis Caesar testified that he joined the investigation on October 23, 1996, and spoke to witness Doris Clark the next day.[1] Clark stated that four men forced her to help them enter an apartment, and identified one man as "Dirt" and another as possibly nicknamed "Main." Clark described the men, and said she had seen three of them around 71st Street and St. Lawrence Avenue. Clark later identified Wright in a photographic array and a lineup, and identified Daniels while touring the area of 71st Street with officers.

¶ 7      Caesar later learned that Daniels made a statement on October 31, 1996, stating that he, defendant, Wright, and another man were members of the same gang, and that the four men went to a location to collect money from, or "violate***," a person named "Ron." Daniels further stated that defendant and Wright were armed with firearms and shot Ron and other individuals. On

---

[1]Doris Clark is also referred to Doris McCarty in the record.

November 2, 1996, Clark and Owens viewed photographic arrays containing defendant's photograph, each woman identified defendant, and he was arrested.

¶ 8     Chicago police detective Steven Bradley testified that he spoke to Daniels several times on October 30 and 31, 1996, and Daniels identified "Reece," whose "proper name" was Maurice Hardaway, as involved in the offenses. After Daniels identified defendant, Bradley obtained photographs of defendant and showed them to Owens and Clark, and both women identified defendant. Bradley did not obtain an arrest warrant for defendant after speaking to Daniels, and did not know whether other officers obtained a warrant.

¶ 9     Following argument, the trial court found probable cause to arrest defendant and denied the motion. The matter proceeded to a jury trial, where the State presented defendant's inculpatory statement and testimony from several witnesses.[2] Defendant testified that he was at home the night of the offenses and only made a statement to implicate Wright, who beat defendant's girlfriend and stole his vehicle. The jury found defendant guilty of two counts of first degree murder, one count of attempted murder, and two counts of home invasion.[3]

¶ 10    In his motion for a new trial, defendant alleged, relevant here, that the court erred in denying his motion to quash arrest and suppress statement as he was arrested without a warrant or probable cause. The trial court denied the motion, and sentenced defendant to natural life in prison for the two murders and 30 years for each count of home invasion and attempted murder, all to run concurrently. Because defendant was found guilty of murdering more than one victim, section 5-

---

[2]Defendant's jury trial was held simultaneously, but separately, with Daniels' and Wright's trials. Daniels and Wright were also sentenced to life in prison. See *People v. Daniels*, 2019 IL App (1st) 170232-U; *People v. Wright*, 2015 IL App (1st) 112456-U. They are not parties to this appeal.

[3]Eight pages are missing from the trial transcript; however, their absence does not affect the disposition of this appeal.

8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1996)) required that he be sentenced to natural life in prison without parole (730 ILCS 5/3-3-3(d) (West 1996)).

¶ 11    On direct appeal, we vacated one home invasion conviction pursuant to the one-act, one-crime doctrine, and otherwise affirmed. See *People v. Hardaway*, No. 1-00-0297 (2001) (unpublished summary order under Supreme Court Rule 23(c)). Defendant then filed two unsuccessful postconviction petitions. See *People v. Hardaway*, 2012 IL App (1st) 1093580-U; 2021 IL App (1st) 182617-U.

¶ 12    On October 29, 2019, defendant filed a *pro se* motion for leave to file a second successive postconviction petition. The petition alleged that the trial court erred when it denied the motion to quash arrest and suppress statement because defendant was illegally arrested without a warrant. The petition further alleged that defendant's claim met the requirements of the cause and prejudice test because *People v. Bass*, 2019 IL App (1st) 160640, *aff'd in part and vacated in part*, 2021 IL 125434, which held that arrests pursuant to investigative alerts were unconstitutional, was new law unavailable to defendant at the time of his trial and direct appeal.

¶ 13    On February 27, 2020, the circuit court denied defendant leave to file the second successive postconviction petition noting, relevant here, that the transcript from the hearing on the motion to quash arrest and suppress statement showed that an officer spoke to Daniels and had no knowledge of an arrest warrant for defendant, and that a "stop order" was issued after defendant was identified by a witness in a photographic array. The court further noted that defendant did not allege that the arresting officers were involved in unlawful conduct or had not acted "according to established policies." The court finally noted that *People v. Braswell*, 2019 IL App (1st) 172810, "upheld" the

use of investigative alerts, relied on *Braswell* to find that the trial court properly denied the motion to quash arrest and suppress statement, and denied defendant leave to file the second successive postconviction petition.

¶ 14    On appeal, defendant contends that the circuit court erred in denying him leave to file the second successive postconviction petition because it raised a "viable" claim that his warrantless arrest was unconstitutional. He argues that the appellate opinion in *Bass* is "better-reasoned" than cases that declined to follow it, and should be followed here.

¶ 15    The Act permits a defendant to assert a substantial denial of his constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Because the Act contemplates the filing of a single petition, leave to file a successive petition will only be granted if the defendant raises a colorable claim of actual innocence or alleges sufficient facts to satisfy the cause and prejudice test. See *People v. Holman*, 2017 IL 120655, ¶¶ 25-26. To establish " 'cause,' " a defendant must show "an objective factor external to the defense" that prevented him from raising the claim in his initial postconviction proceeding. *Id.* ¶ 26. To establish " 'prejudice,' " he must show that the alleged constitutional error "so infected his trial that the resulting conviction violated due process." *Id.* We review the circuit court's denial of leave to file a successive postconviction petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13. Here, we find that defendant has not established prejudice.

¶ 16    Defendant relies on *Bass*, 2019 IL App (1st) 160640, *aff'd in part and vacated in part*, 2021 IL 125434, to argue his arrest pursuant to a "stop order" alert rather than an arrest warrant was unconstitutional, and the trial court therefore erred by denying his motion to quash arrest and suppress statement.

¶ 17    In reviewing a ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review. *People v. Holmes*, 2017 IL 120407, ¶ 9. Under this standard, we give deference to the court's findings of fact, reversing them only where they are contrary to the manifest weight of the evidence. *Id.* However, we review *de novo* "the court's ultimate legal ruling as to whether the evidence should be suppressed." *Id.*

¶ 18    Both the United States and Illinois Constitutions protect individuals against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "An arrest executed without a warrant is valid only if supported by probable cause." *People v. Grant*, 2013 IL 112734, ¶ 11. "Probable cause for an arrest exists when the totality of the facts and circumstances known to the officer is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime." (Internal quotation marks omitted.) *Braswell*, 2019 IL App (1st) 172810, ¶ 27. As this court has noted, when a defendant is arrested without "requisite probable cause," the "fruits of that arrest will be inadmissible in a criminal prosecution." *People v. Spain*, 2019 IL App (1st) 163184, ¶ 42. A defendant bears the initial burden of proof, and once he shows a *prima facie* case of an unconstitutional arrest, the burden shifts to the State to show his warrantless arrest was based on probable cause. See *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 49. However, the ultimate burden of proof remains with a defendant. *Id.*

¶ 19    The parties do not dispute that defendant's arrest was warrantless. Therefore, the State was required to demonstrate that the arrest was based on probable cause, and therefore legally justified.

¶ 20    An arrest without a warrant is valid only when supported by probable cause. *Grant*, 2013 IL 112734, ¶ 11. Police have probable cause to arrest an individual when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that

the individual committed a crime. *Id*. Whether probable cause exists depends on the totality of the circumstances at the time of the arrest. *Id*. An officer's factual knowledge, based on his or her police experience, is relevant to determining probable cause. *Id*. Probable cause is governed by commonsense considerations, and the calculation concerns the probability of criminal activity rather than proof beyond a reasonable doubt. *Id.*

¶ 21    While an arrest may be based on information beyond the arresting officer's personal knowledge, the State must show that the information reflected facts sufficient to show probable cause. See *People v. Hyland*, 2012 IL App (1st) 110966, ¶ 22. "An arresting officer may rely on information received in an official police communication, provided that the officer who issued the communication had probable cause to arrest." *Simmons*, 2020 IL App (1st) 170650, ¶ 56.

¶ 22    After reviewing the record, we conclude that the State presented sufficient evidence at the hearing on the motion to quash arrest and suppress statement to establish that the police had probable cause to arrest defendant. Bradley testified that after Daniels made a statement, Bradley obtained photographs of defendant that he showed to a victim, Owens, and a witness, Clark, and both women identified defendant. Bradley did not obtain an arrest warrant and defendant was thereafter arrested.

¶ 23    Thus, at the time of defendant's arrest on November 2, 1996, he had been implicated by a co-offender and identified in photographic arrays by the surviving victim and a witness. Although Bradley did not obtain an arrest warrant, the facts known to him, and which supported the investigative alert or "stop order," established probable cause to arrest defendant. *Grant*, 2013 IL 112734, ¶ 11.

¶ 24    Defendant, however, relies on the appellate opinion in *Bass* to argue that his warrantless arrest was unconstitutional. He acknowledges that the appellate court's holding was vacated by our supreme court in *People v. Bass*, 2021 IL 125434, but argues that the supreme court did not express an opinion as to the constitutionality of investigative alerts or disagree with the appellate court's "sound" analysis.

¶ 25    In *Bass*, the defendant was arrested pursuant to an investigative alert based on probable cause, and a divided panel of the appellate court concluded that his motion to suppress should have been granted because arrests based solely on investigative alerts, even when an alert reflects probable cause, violate the Illinois Constitution. *Bass*, 2019 IL App (1st) 160640, ¶¶ 7, 43, 71. Our supreme court, however, found that the traffic stop which led to the discovery of the defendant's investigative alert was unreasonably extended and the motion to suppress should therefore have been granted. *Bass*, 2021 IL 125434, ¶ 26. Having affirmed this court's decision to reverse the defendant's conviction and remand for a new trial, the supreme court declined to "express any opinion on limited lockstep analysis, its application to warrants or investigatory alerts, or the constitutionality of investigative alerts," and vacated the "portions of the appellate opinion dealing with these issues" *Id*. ¶¶ 27, 29-31. Because our supreme court decided the case based upon the legality of the traffic stop, it did not address whether investigative alerts violate the Illinois Constitution. *Id*. ¶¶ 29, 33; see also *People v. Little*, 2021 IL App (1st) 181984, ¶ 63.

¶ 26    Accordingly, because our supreme court has vacated the portions of the appellate court opinion in *Bass* regarding the constitutionality of investigative alerts, we will not follow those portions of the opinion. Rather, following those cases which have concluded that investigative alerts do not violate the Illinois Constitution, we conclude that the trial court did not err when it

denied defendant's motion to quash arrest and suppress statement. See *Simmons*, 2020 IL App (1st) 170650, ¶ 64; *People v. Thornton*, 2020 IL App (1st) 170753, ¶¶ 45-50; *People v. Bahena*, 2020 IL App (1st) 180197, ¶¶ 59-64; *Braswell*, 2019 IL App (1st) 172810, ¶¶ 36-39. As defendant has failed to establish that the trial court erred in denying his motion to quash arrest and suppress statement, he cannot establish prejudice. *Holman*, 2017 IL 120655, ¶ 26. Accordingly, because defendant failed to meet the requirements of the cause and prejudice test, the circuit court properly denied him leave to file the second successive postconviction petition. See *Bailey*, 2017 IL 121450, ¶ 13.

¶ 27   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28   Affirmed.