NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220481-U

NO. 4-22-0481

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| LaDERRIUS WILLIAMS, | ) | No. 20CF346 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice DeArmond and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because the police had probable cause to arrest defendant for fleeing or attempting to elude a peace officer (625 ILCS 5/11-204(a) (West 2020)) and for reckless driving (*id.* § 11-503(a)(1)), the arrest was valid, as was the search incident to the arrest, and the denial of defendant's motion for suppression of evidence was correct.

¶ 2    In a stipulated bench trial, the circuit court of Peoria County found defendant, LaDerrius Williams, guilty of a single count of unlawfully possessing a controlled substance (720 ILCS 570/401(c) (West 2020)). The court sentenced him to probation for 30 months. He appeals, contending that the court erred by denying his motion to suppress evidence.

¶ 3                               I. BACKGROUND

¶ 4    In the motion for suppression, which defendant filed on February 4, 2021, he claimed that the police lacked probable cause to stop him or to arrest him. Therefore, he requested

that the circuit court "suppress any and all evidence and statements obtained pursuant [to]" the "stop, detention[,] and/or arrest."

¶ 5        In the hearing on the motion for suppression, the evidence tended to show the following. On June 20, 2020, around 1:45 a.m. or 2 a.m., Peoria police officers were investigating a shots-fired incident. At the intersection of Laramie Street and Krause Avenue, they found a wrecked car pierced with bullet holes.

¶ 6        A large crowd was at Laramie Liquors, across the street. A red Chevrolet pickup truck bolted out of the parking lot of the liquor store, squealing its tires, and sped south on Laramie Street. Peoria Police Officer Jonathan Irving got into his patrol car and pursued the truck, with the overhead lights of his patrol car flashing. He intended to pull the truck over for squealing its tires and for reckless driving. The truck turned east onto Montana Street and lengthened its lead, traveling, by Irving's estimate, at 50 miles per hour. From afar, Irving saw the truck pull into Harrison Homes via the Montana Street entrance.

¶ 7        When Irving arrived at the Harrison Homes parking lot, he saw the truck parked on the west side of the parking lot. The truck was idling, its headlights were on, and its doors were unlocked, but nobody was in the truck. The Peoria police department had a policy of impounding any vehicle that had been used to flee or elude the police. Accordingly, Irving and another Peoria police officer, Chad Oberle, began an inventory search of the truck in preparation for impounding it. As they were searching the truck, defendant approached.

¶ 8        To quote from Oberle's testimony, defendant told the police "the truck was his and [that] he wanted to get in the truck." Oberle continued:

"A. He asked if he could get in. I told him he could not. He continued to walk towards the truck. I put my hand out in front of me on his chest. He continued to try to push past me to get in the truck. At that point, we took him into custody.

Q. For what?

A. For obstructing police."

¶ 9 At the time of his encounter with defendant, Oberle was wearing a body camera. The video footage from the body camera is in the record and is broken up into two parts—neither of which, however, has sound. In one part, Oberle appears to be driving in his patrol car toward Harrison Homes. Upon arriving there, he gets out of his patrol car and approaches the red truck, which is parked over one of the white parking lines. Oberle opens a door of the truck and looks in the front and in the back. The truck is unoccupied. Then the footage appears to show Oberle backing out of the truck and going around the truck. Other police officers are seen milling around, and the emergency lights of several patrol cars are seen flashing.

¶ 10 In the other part of the video footage, police officers are opening the doors of the truck and are shining flashlights into it. Another police officer is stooping down next to an open door of the truck and is rummaging through some things on the rear passenger floorboard. Then the camera swings to the left. An African American man in an orange T-shirt has come onto the scene, and he is talking with a police officer. The camera comes closer to the man. While talking, the man gestures in the direction of the truck with both hands and then gestures with a palm facing upward. A police officer's hand can be seen gesturing back. During this conversation, two other police officers approach from the side, and one of the police officers shines his flashlight at the man. Still talking, the man moves toward the truck. The moment he does so, police officers grab

- 3 -

him and put him in handcuffs. After the man is handcuffed, one of the police officers stoops to the ground next to him, and the man looks down at where the officer is stooping.

¶ 11        Although the videos in the record are silent films, the parties do not appear to dispute one another's accounts of what is said in the videos. According to the briefs, Irving tells Oberle and other police officers that " 'all [he] saw was a black guy.' " As police officers search the truck, defendant approaches and asks them what they are doing. One of the police officers asks him if the truck is his, and defendant answers that it is. Oberle asks defendant why the truck is parked illegally. Defendant answers that he knows nothing about that. A police officer asks him who was driving. Defendant replies that he let someone use his truck to go to the store. Defendant asks, " 'What's up?' " The police officer requests that defendant provide identification. Defendant answers that he has no identification with him. Oberle informs defendant that a tow truck is coming for the pickup truck. Defendant says, " 'Alright, you got a tow truck coming for it, let me get my—,' " and he moves toward the truck. Oberle grabs defendant's arm, telling him, " '[Y]ou're not going in it.' " Defendant says, " 'Why you grabbing me? I'm not resisting arrest or nothing.' " Police officers then cuff defendant's hands behind his back. A police officer accuses defendant of obstructing justice, and he asks defendant for his name. As defendant identifies himself, a police officer standing behind him bends down and exclaims, " 'Ah!' " Defendant looks down at the ground, where the police officer apparently has found something. What the police officer says next cannot be made out, but the parties appear to agree it presumably is, "You are under arrest," because defendant then asks, " '[F]or what?' " The police officer answers, " '[P]ossession.' " Oberle says, " '[Y]ep.' " The police officer who found the object on the ground tells other police officers to " 'watch that evidence.' " The record does not appear to reveal what this object on the ground was. A couple of police officers then pat down defendant and search his pockets. According

to the stipulation in the bench trial, the 6.6 grams of cocaine that were the subject of the charge in this case were found in defendant's pocket. Shortly before leaving the scene, Irving tells Oberle that he cannot identify defendant as the driver who fled from the liquor store but that, earlier in the day, someone saw defendant in the truck.

¶ 12        In the suppression hearing, defense counsel asked Irving, "And the arrest was not anything dealing with the vehicle driving, is that correct?" Irving answered, "Correct." Nevertheless, the circuit court found that the police had probable cause to "detain and search [defendant,] given the fact that his truck *** had fled from an officer and then [defendant] appeared."

¶ 13                                II. ANALYSIS

¶ 14        The federal and state constitutions forbid unreasonable seizures of persons and their possessions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A warrantless arrest is unreasonable unless it is supported by probable cause. *People v. Marcella*, 2013 IL App (2d) 120585, ¶ 26. Evidence obtained through the exploitation of an illegal arrest is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Under section 114-12(a)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(a)(1) (West 2020)), "[a] defendant aggrieved by an unlawful search and seizure may move the court for the return of property and to suppress as evidence anything so obtained on the ground that *** [t]he search and seizure without a warrant was illegal."

¶ 15        The Illinois Supreme Court has held:

            "Whether the trial court erred in denying the motion to suppress evidence is subject
            to a two-part standard of review: the trial court's findings of historical fact are
            reviewed for clear error and may be rejected only if they are against the manifest

weight of the evidence, but the trial court's ultimate ruling as to whether suppression is warranted is reviewed *de novo*." *People v. Bass*, 2021 IL 125434, ¶ 21.

The only findings of historical fact the circuit court made were that "[defendant's] truck *** had fled from an officer and then [defendant] appeared." Because those facts appear to be undisputed, we have no occasion to decide whether the court's factual findings are against the manifest weight of the evidence. Therefore, by default, we proceed to the remaining part of the two-part standard of review that the supreme court prescribed: we decide *de novo* whether suppression is warranted. See *id.*

¶ 16        If the police arrested defendant illegally, suppression might be warranted, for the police would not have searched his pockets, and would not have found the cocaine, unless they had arrested him. See *Wong Sun*, 371 U.S. at 488. The search of his pockets was incident to the arrest. See *People v. Bailey*, 159 Ill. 2d 498, 503 (1994) (observing that "[i]t is reasonable," under the fourth amendment (U.S. Const., amend. IV), "for police to search the arrestee for weapons that the arrestee could use to resist arrest or escape, or for evidence that the arrestee could conceal or destroy" and adding that "[t]he search is restricted to the person of the arrestee and any area into which the arrestee can reach"). If the warrantless arrest was unsupported by probable cause, the arrest was invalid, and so was the search incident to the arrest. See *People v. Grant*, 2013 IL 112734, ¶ 11. On the other hand, if the warrantless arrest was supported by probable cause, "the arrest is deemed lawful, and evidence obtained during a warrantless search incident to that arrest is admissible to prove defendant's guilt." *People v. Tisler*, 103 Ill. 2d 226, 237 (1984).

¶ 17        Whether there was probable cause for the arrest depends on the totality of the circumstances at the time of the arrest. See *Grant*, 2013 IL 112734, ¶ 11. "Probable cause to arrest

exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Id.* "The probability of criminal activity, rather than proof beyond a reasonable doubt, is the standard for determining whether probable cause is present. [Citations.] Whether the necessary probability exists is governed not by technical legal rules, but rather by common-sense considerations that are factual and practical." *Tisler*, 103 Ill. 2d at 236.

¶ 18    According to the United States Supreme Court, it is a "commonsense inference" that the owner of the vehicle is likely the driver. *Kansas v. Glover*, _____ U.S. _____, _____, 140 S. Ct. 1183, 1188 (2020); see also *Village of Lake in the Hills v. Lloyd*, 227 Ill. App. 3d 351, 353 (1992) (concluding that, "[b]ased on such common sense, *** an officer may reasonably presume that the owner of a vehicle is also the driver"); *People v. Barnes*, 152 Ill. App. 3d 1004, 1006 (1987) (saying it is a "reasonable inference" that "the owner is driving the vehicle," for "[w]hile other people may drive an owner's vehicle, it is clear that the owner will do the vast amount of driving"). In *Glover*, a police officer was on routine patrol when he ran a license-plate check on a pickup truck. *Glover*, _____ U.S. at _____, 140 S. Ct. at 1187. The information came back that the truck was registered to someone whose driver's license had been revoked, namely, the defendant. *Id.* The police officer did not attempt to identify the driver. *Id.* Instead, solely on the basis of the information that the registered owner of the truck had a revoked driver's license, the police officer pulled the truck over. *Id.* The question before the Supreme Court was whether this information was sufficient, under the fourth amendment (U.S. Const., amend. IV), to justify an investigative traffic stop. *Glover*, _____ U.S. at _____, 140 S. Ct. at 1186. The Supreme Court concluded that it was. *Id.* at _____, 140 S. Ct. at 1188. The Supreme Court held, "The inference that the driver of a car is its registered owner *** is a reasonable inference made by ordinary people

- 7 -

on a daily basis." *Id.* at _____, 140 S. Ct. at 1189. The police officer "drew the commonsense inference that [the defendant] was likely the driver of the vehicle, which provided more than reasonable suspicion to initiate the stop." *Id.* at _____, 140 S. Ct. at 1188.

¶ 19 To be sure, the reasonable suspicion required for a traffic stop is a less demanding standard than the probable cause required for an arrest. See *id. Glover*, *Barnes*, and *Lloyd* were all reasonable-suspicion cases, not probable-cause cases. Even so, according to the United States Supreme Court in *Glover*, "the commonsense inference" that the registered owner of the vehicle was "likely" the person driving the vehicle "provided *more than reasonable suspicion*." (Emphasis added.) *Id.* Thus, according to the Supreme Court, the facts in *Glover* exceeded the standard of reasonable suspicion. Admittedly, the Supreme Court did not specifically hold in *Glover* that the more demanding standard of probable cause was met. Likelihood, however, is likelihood, and common sense is common sense, regardless of whether the question is reasonable suspicion to initiate an investigatory traffic stop or probable cause to arrest a suspect involved in that stop. To reiterate, the Illinois Supreme Court has explained that "[t]he *probability* of criminal activity *** is the standard for determining whether probable cause is present" and that "[w]hether the necessary probability exists is governed *** by *common-sense* considerations." (Emphases added.) *Tisler*, 103 Ill. 2d at 236. The Supreme Court has said it is common sense that the owner of a vehicle is probably the individual who is driving it. *Glover*, _____ U.S. at _____, 140 S. Ct. at 1188. That statement would be just as true in the assessment of probable cause to arrest as in the assessment of reasonable suspicion to initiate a stop—and as *Tisler* teaches, commonsense considerations govern probable cause (*Tisler*, 103 Ill. 2d at 236). Because defendant admitted to the police that the truck was his, common sense would suggest that he likely was the individual who had driven the truck.

¶ 20        Even if we assumed, for the sake of argument, that the owner-driver inference in *Glover* would fall short of probable cause, this inference would contribute to probable cause. Whether the Peoria police had probable cause to arrest defendant depends on the totality of the circumstances known to the Peoria police when they arrested him. See *Grant*, 2013 IL 112734, ¶ 11 (holding that "[p]robable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime"). In addition to the commonsense inference that the owner of a vehicle is usually its driver—an inference that a reasonably cautious person could regard as not dispelled by defendant's claim that an unnamed friend drove the truck—the totality of the circumstances included defendant's behavior at Harrison Homes. In the videos, defendant does not come across as being an inhibited individual. A reasonably cautious person could regard it as significant that when the police informed defendant that his truck was going to be towed, defendant never asked why. Granted, before telling defendant that his truck would be towed, a police officer remarked to him that the truck was improperly parked. Surely, however, defendant did not think that multiple patrol cars had converged on his truck at 2 a.m. in a public-housing parking lot (as opposed to a busy market thoroughfare) because a tire of his truck was over a parking line. Instead of asking what would have otherwise been the obvious question of why his truck was being towed, defendant said, " 'Alright, you got a tow truck coming for it, let me get my [things out of the truck].' " By arguable inference, the reason that defendant never asked the police why they were towing his truck was that he already knew why: because his truck had been used to flee the police. And he already knew, it could be further inferred, because he was the individual who had led the police on this chase.

¶ 21		In sum, then, in our *de novo* review, we find that the police had probable cause to arrest defendant for fleeing or attempting to elude a peace officer (625 ILCS 5/11-204(a) (West 2020)) and for reckless driving (*id.* § 11-503(a)(1)). Because "the arrest is deemed lawful, *** evidence obtained during a warrantless search incident to that arrest is admissible to prove defendant's guilt." *Tisler*, 103 Ill. 2d at 237.

¶ 22		It is true that, in the suppression hearing, Irving answered, "Correct," when asked, "And the arrest was not anything dealing with the vehicle driving, is that correct?" Nevertheless, "[w]hether an officer has probable cause to arrest is an objective consideration, and the subjective intent of the officer in initiating the encounter, including whether the officer planned to arrest the individual, is irrelevant." *People v. White*, 2021 IL App (1st) 191095, ¶ 23. If it is irrelevant whether the police officer planned to arrest the individual, it is equally irrelevant whether the officer planned to arrest the individual on certain grounds as opposed to other grounds. As we have discussed, there were objective grounds for believing that defendant likely had committed two Class A misdemeanors. See 625 ILCS 5/11-204(a), 11-503(b) (West 2020). Because the arrest was supported by probable cause, the arrest was valid, as was the search incident to the arrest. Therefore, we find no error in the denial of defendant's motion for suppression of evidence.

¶ 23		III. CONCLUSION

¶ 24		For the foregoing reasons, we affirm the circuit court's judgment.

¶ 25		Affirmed.