2022 IL App (1st) 200656-U

No. 1-20-0656

FIRST DIVISION

May 9, 2022

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 25223 |
| | ) | |
| TERRANCE RUSH, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

ORDER

¶ 1   *Held*:  The summary dismissal of defendant's *pro se* postconviction petition is affirmed, as the fruits of any unlawful arrest had at most a minimal impact on the quantum of the trial evidence, and any error that resulted from denying the motion to suppress evidence would have been harmless.

¶ 2   Defendant Terrance Rush appeals from the circuit court's summary dismissal of his *pro se* petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal, defendant contends that the circuit court erroneously dismissed the petition because his arrest pursuant to an investigative alert violated the Illinois Constitution.

Although we do not believe the investigative alert was constitutional, we find that the record contains sufficient evidence beyond the fruits of the unlawful arrest, in the form of other witnesses and other proper identifications of defendant, that the harm done to defendant is minimal to none. For that reason, we affirm the dismissal of the postconviction petition.

¶ 3     BACKGROUND

¶ 4     Following a 2008 jury trial, defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and sentenced to 75 years in prison. The facts were detailed in our order on direct appeal. See *People v. Rush*, No 1-08-1466 (2010) (unpublished order under Supreme Court Rule 23). We therefore relate only the facts relevant to the instant appeal.

¶ 5     Defendant's arrest arose from the fatal shooting of Decotis Kincaid on the evening of September 7, 2006. Defendant filed a pretrial motion to quash arrest and suppress evidence alleging that he was arrested without a warrant and probable cause.

¶ 6     At the hearing on the motion, Chicago police detective Richard Glenke testified that he investigated the murder and issued an investigative alert for defendant without seeking an arrest warrant. Glenke testified that the shooting occurred around 11:30 p.m. on September 7, 2006. He learned from other officers that Betty Hunt witnessed the shooting and believed the shooter was a person named "Terrance" who lived on Paulina Street.[1] Glenke created a photographic array of men named Terrance who lived on Paulina Street and showed it to Hunt in the early morning of September 8, 2006. Hunt did not identify anyone in that array. Later that morning, Glenke showed Hunt a second photographic array that included individuals from the "east-west block" of the area, and Hunt identified defendant in that second array. Based upon Hunt's identification, Glenke

_____

[1] Betty Hunt is also referred to as "Betty Scott" in the record.

issued an investigative alert for defendant. On September 30, 2006, another witness, Lamont Colbert, identified defendant as the shooter in a photographic array. After defendant was arrested on October 5, 2006, Hunt viewed a physical lineup and again identified defendant as the shooter.

¶ 7    Chicago police officer Arshell Dennis testified that, pursuant to the investigative alert, he arrested defendant in the lobby of the Bridgeview courthouse on October 5, 2006. Dennis acknowledged he did not see defendant committing any crime and that he did not have an arrest warrant. Dennis acknowledged that the investigative alert was not signed by a judge or magistrate.

¶ 8    In closing argument at the hearing, the defense argued that Hunt's photo array identification did not provide probable cause for defendant's arrest. Defense counsel alternatively argued that even if there was probable cause, the "proper" course of action for police was to obtain a warrant from a judge. Counsel argued that there were no exigent circumstances and there was "plenty of time" for police to obtain a warrant before defendant's arrest. The trial court denied the motion, finding that the investigative alert "reflected *** probable cause" to arrest defendant based upon the identifications of Hunt and Colbert.

¶ 9    Defendant's first jury trial ended in a mistrial. At the second jury trial, Hunt testified that on September 7, 2006, she lived near the intersection of Hermitage Avenue and 84th Street in Chicago. Around 11:27 p.m., Hunt was in her backyard when she heard gunshots from the direction of a nearby park. She ran to the alley to see if her children were involved. Soon after, she saw defendant, whom she knew as "Terrance," walking down the street with another man, William Levell Young (Levell), whose arm was cradled against his chest. A vehicle arrived and defendant assisted Levell inside, saying, "my boy got shot." Hunt turned away, and when she looked back, she saw defendant holding a firearm and walking toward the alley. Hunt next saw a young man

emerge from the alley. Defendant approached this man and repeated that his "boy got shot." Hunt hid behind a tree, covered her eyes, and heard gunshots.

¶ 10    When Hunt next looked, she did not see defendant. The other man had "collapsed" on the curb. Hunt called the police and spoke to officers when they arrived. In the early morning of September 8, 2006, Hunt went a police station, spoke to an assistant State's Attorney (ASA), made a written statement, and identified defendant in a photographic array. On October 6, 2006, she identified defendant in a lineup. On October 23, 2006, Hunt testified before the grand jury in accordance with her written statement.

¶ 11    At trial, Hunt acknowledged that her statement indicated that defendant pointed a firearm at an unarmed man and fired six times. She testified, however, that she was high and drunk when she made the statement and testified before the grand jury. Hunt acknowledged telling the ASA on September 8, 2006, and also the grand jury, that she was not under the influence of alcohol or drugs.

¶ 12    Levell testified that on the night of the shooting, he was with defendant and others drinking at a park and "having a nice time." Levell denied that defendant had a firearm. At one point, Levell was shot in the right forearm, and was taken to the hospital. He did not see defendant after the shooting.

¶ 13    Levell acknowledged making a written statement asserting that he saw defendant use a firearm to push a person over the hood of a vehicle, before he heard gunshots. Levell testified that he fabricated the story in the written statement because he wanted to go home. However, he acknowledged that his grand jury testimony comported with this statement.

¶ 14    Lamont Colbert testified that at the time of the shooting, he was in a parked vehicle near a park. He recalled seeing Kincaid, Levell, defendant, and others in the park. Defendant and Kincaid had an altercation, and defendant pointed a firearm at Kincaid's face. A person Colbert knew as "Rawlo" then ran into the park shooting a firearm, and defendant and Kincaid fled in opposite directions. Colbert drove away and saw Kincaid crawling away from someone who was shooting at him. Colbert testified that he was "not sure" whether defendant was the shooter. Colbert acknowledged that he gave a written statement to police in which he asserted that defendant shot Kincaid and that his grand jury testimony comported with his written statement.

¶ 15    Chicago police officer Wendy Bond testified that she spoke to Hunt on the night of the shooting. Hunt was reluctant to speak, but identified the shooter as "Terrance" who lived on the 8300 block of Paulina. Hunt did not appear to be under the influence of alcohol or drugs.

¶ 16    Consistent with his testimony at the pretrial hearing, Glenke testified that he prepared two photographic arrays containing pictures of individuals named Terrance, and that Hunt identified defendant in the second array. Hunt did not appear to be under the influence of alcohol or narcotics.

¶ 17    The jury found defendant guilty of first degree murder during which he discharged a firearm. The trial court sentenced defendant to 75 years in prison.

¶ 18    On direct appeal, we affirmed defendant's conviction and sentence over his contentions that the trial court failed to properly question the venire, he was not proven guilty beyond a reasonable doubt, and his sentence was excessive. See *Rush*, No 1-08-1466 (2010) (unpublished order under Supreme Court Rule 23).

¶ 19    On January 15, 2020, defendant filed a *pro se* postconviction petition alleging that the trial court's denial of his motion to quash arrest and suppress evidence was "patently erroneous"

because his arrest based on an investigative alert violated article I, section 6 of the Illinois Constitution. Ill. Const. 1970, art. I, § 6. Defendant relied on this court's discussion of the constitutionality of investigative alerts in *People v. Bass*, 2019 IL App (1st) 160640, *aff'd in part and vacated in part*, 2021 IL 125434. Defendant's petition stated that under *Bass*, "An arrest is unconstitutional when it is based on an investigative alert issued by a police department, rather than on the presentation of sworn facts to a judge." Defendant averred that our court's holding in *Bass* aligned with his argument to the trial court at the motion to suppress that the investigative alert was improper because it was "not signed by a magistrate."

¶ 20    On February 28, 2020, the circuit court dismissed the petition in a written order, noting that the appellate opinion in *Bass* "did not foreclose on the application of the good faith exception." The court also noted that defendant did not allege in his petition that the police acted with malice or "outside the confines of the settled precedent" when they arrested him. The circuit court also recognized that another opinion of this court, *People v. Braswell*, 2019 IL App (1st) 172810, expressly disagreed with *Bass* and declined to find investigative alerts unconstitutional. The circuit court stated that it would follow *Braswell* and otherwise noted that the investigative alert was issued only after a witness had identified defendant as the shooter. The circuit court concluded the investigative alert "cannot be found to be unconstitutional" and thus denied the postconviction petition.

¶ 21    ANALYSIS

¶ 22    On appeal, defendant contends that the circuit court erred in summarily dismissing his petition because it stated the "gist of a claim" that his arrest pursuant to an investigative alert violated article I, section 6 of the Illinois Constitution. Ill. Const. 1970, art. I, § 6.  He relies on the

reasoning in this court's opinion in *Bass*, 2019 IL App (1st) 160640, *aff'd in part and vacated in part*, 2021 IL 125434. He recognizes that our constitutional analysis of investigative alerts in *Bass* was later vacated by our supreme court, 2021 IL 125434, and that *Braswell* and other decisions of our court have expressly disagreed with *Bass*. Nonetheless, he urges that we should "reaffirm" our holding in *Bass* because it is "better-reasoned" than cases that declined to follow it.

¶ 23 The State asserts a number of reasons why we should affirm the summary dismissal of the postconviction petition. The State primarily argues that, because the petition "failed to claim that the police acted without a good faith reliance on the constitutionality of the investigative alert," dismissal of the petition was proper, regardless of the propriety of this court's holding in *Bass*. The State otherwise argues that (1) the trial court correctly followed *Braswell* in declining to find the defendant's arrest was unconstitutional, (2) defendant "cannot show that he was harmed by his supposedly illegal arrest" or the resulting physical lineup since he had already been identified as the shooter, and (3) because our supreme court vacated the relevant holding in *Bass*, *Braswell* and similar decisions are "controlling law" on the legality of investigative alert.

¶ 24 Regarding defendant's arguments about reviving the reasoning in *Bass*, at the time of defendant's arrest, there were no decisions from this court addressing the constitutionality of an investigative alert, and our supreme court has yet to address the topic. See *Bass*, 2021 IL 125434, ¶ 62 (Neville, J., concurring in part and dissenting in part) (noting the supreme court's decision not to discuss investigative alerts "deprives the Chicago Police Department of crucial authoritative guidance on the procedures to follow under the Illinois Constitution when making warrantless arrests.") While we believe that defendant's arrest pursuant to an investigative alert issued nearly one month earlier was unconstitutional and the police could have and should have sought a judicial

warrant, the record in this case shows that there was sufficient evidence outside of the fruits of the unlawful arrest that supported defendant's conviction, including other positive identifications of defendant by Hunt and the testimony of other witnesses. So, defendant's postconviction petition lacked merit and was properly denied.

¶ 25    The Act provides a three-stage procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). The circuit court dismissed defendant's petition at the first stage of proceedings under the Act. At the first stage, the defendant files a petition, which the circuit court independently reviews and, taking the allegations as true, determines whether it is frivolous or is patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9. A petition should be summarily dismissed as frivolous or patently without merit only when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Fanciful factual allegations are those which are "fantastic or delusional," and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id.* at 16-17. We review the summary dismissal of a postconviction petition *de novo*. *Id.* at 9.

¶ 26    Defendant's petition is premised on his contention that the trial court erred in denying his motion to quash arrest and suppress evidence. When reviewing the trial court's ruling on such a motion, this court applies a two-part standard of review. *People v. Grant*, 2013 IL 112734, ¶ 12. Under this standard, we give deference to the court's findings of fact, reversing them only where

they are contrary to the manifest weight of the evidence. *Id*. However, we review *de novo* the court's ultimate legal ruling. *Id*.

¶ 27    We briefly review the exclusionary rule. "[E]vidence obtained as a result of an illegal arrest may be subject to the exclusionary rule and inadmissible." *People v. Johnson*, 237 Ill. 2d 81, 92 (2010) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963)). "Generally, courts will not admit evidence obtained in violation of the fourth amendment." *People v. Burns*, 2016 IL 118973, ¶ 47.[2] The "prime purpose of the exclusionary rule is to deter future unlawful police conduct." (Internal quotation marks omitted.) *Id.*

¶ 28    However, "[t]here is no constitutional right to have the evidence resulting from an illegal search or seizure suppressed at trial. [Citation.]" *People v. LeFlore,* 2015 IL 116799, ¶ 22. The "[e]xclusion of evidence is a court's last resort, not its first impulse." *Burns*, 2016 IL 118973, ¶ 51 (citing *LeFlore*, 2015 IL 116799, ¶ 22). In turn, "application of the exclusionary rule has been restricted to those 'unusual cases' where it can achieve its sole objective: to deter future fourth amendment violations. [Citation.]" *LeFlore*, 2015 IL 116799, ¶ 22.

¶ 29    A review of the denial of a motion to suppress illegally obtained evidence in a criminal trial is subject to this harmless error principle. *People v. Hansen*¸ 90 Ill.App.3d 407, 408-09 (1st Dist. 1980 (citing *People v. Clark*, 55 Ill.App.3d 379, 386 (1st Dist. 1977); *see also People v. Garza*, 276 Ill.App.3d 659, 668 (1st Dist. 2015) (trial court's error in denying defendant's motion to suppress evidence was harmless because the evidence recovered was not important to defendant's conviction and there was overwhelming independent evidence of defendant's guilt).

---

[2] We note that Illinois supreme court precedent discussing the exclusionary rule and the good-faith exception speak in terms of fourth amendment violations, without suggesting they apply any differently in cases involving article I, section 6 of the Illinois Constitution.

The test is whether the error was harmless beyond a reasonable doubt. *Hansen*, 90 Ill.App.3d at 409 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). The focus of this inquiry "should be on the character and quality of the illegally obtained evidence as it relates to other evidence on the same issue, and the possible impact of the tainted evidence on the jury." *Id*.

¶ 30    Here, the record reflects (and defendant does not dispute) that there was probable cause for defendant's arrest outside of Hunt's identification of the shooter on September 8, 2006 (which led to the issuance of the investigative alert). Hunt later confirmed her identification of defendant multiple times, in a written statement, a photographic array, and a lineup. Furthermore, witnesses Colbert and Levell identified defendant as well. Therefore, the record shows that there was other evidence that was not tainted by the unconstitutional investigative alert that supported defendant's conviction. Additionally, since the only evidence admitted at trial that was the fruit of the unlawful arrest was one lineup identification of defendant by Hunt, every other identification occurred before his arrest. This severely minimizes the impact of the improperly obtained evidence, and we find the error to have been harmless beyond a reasonable doubt. Furthermore, rather than achieving the exclusionary rule's sole objective of deterring further fourth amendment violations, here, it would result in overturning a conviction that had a proper basis in the totality of the evidence.

¶ 31    Having found that any evidence obtained through the unlawful arrest had minimal to no impact on the totality of the evidence supporting defendant's conviction, and that he therefore cannot show that the fruits of the unlawful arrest harmed him, we need not further consider the State's additional argument that the good faith exception should apply.

¶ 32    In sum, the facts and legal landscape were such that defendant's arrest pursuant to an investigative alert was objectively reasonable, as sufficient properly obtained evidence existed to

support his conviction. Furthermore, given the lack of harm caused by the introduction of evidence obtained through the unconstitutional investigative alert, the trial court did not err in denying the pretrial motion to suppress, even if the investigative alert was otherwise unconstitutional. In turn, the postconviction petition lacked merit and was properly dismissed.

¶ 33     For the foregoing reason, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.